UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN J., <br>    Plaintiff, <br>  v. <br> KILOLO KIJAKAZI, <br>    Defendant. | Case No. 20-cv-05797-DMR <br><br> **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br> Re: Dkt. No. 31 |

Plaintiff Juan J. moves for summary judgment to reverse the Commissioner of the Social Security Administration's ("SSA") final administrative decision, which found Plaintiff not disabled and therefore denied his application for benefits under the Social Security Act, 42 U.S.C. § 401 *et seq*. [Docket Nos. 31 ("Mot."); 38.] The Commissioner cross-moves to affirm. [Docket No. 37 ("Opp'n").] For the reasons stated below, the court grants Plaintiff's motion in part and denies it in part, grants the Commissioner's motion in part and denies it in part, and remands to the agency for further proceedings.

**I. PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on January 19, 2017, alleging disability beginning on December 1, 2016. Administrative Record ("A.R.") 232-40. After conducting two hearings at which Plaintiff and his girlfriend Nancy Parker testified, an Administrative Law Judge ("ALJ") issued a decision on June 26, 2019 denying benefits. A.R. 19-30; *see* A.R. 37-72 (transcript of May 23, 2019 hearing, including Plaintiff's testimony); A.R. 73-95 (transcript of October 11, 2018 hearing, including Parker's testimony).[1]  The ALJ found that

---

[1] At the first hearing, the ALJ allowed Plaintiff's counsel to amend the disability onset date to December 27, 2016. A.R. 77. The ALJ's opinion states that Plaintiff applied on December 27,

Plaintiff had the following severe impairments: generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), and chronic obstructive pulmonary deficiency ("COPD"). A.R. 21. He also found that Plaintiff had the following non-severe impairments: diabetes mellitus, low vision, hypertension, history of heart attack, history of gunshot wound, and history of drug and alcohol use in sustained remission. *Id.* He further found that Plaintiff had a non-medically determinable impairment of low back pain. A.R. 21-22.

The ALJ found that Plaintiff's COPD and mental impairments did not meet or medically equal the severity of a listed impairment. A.R. 22. The ALJ further found that Plaintiff has a moderate limitation in understanding, remembering, or applying information; a mild limitation in interacting with others, and no limitation in concentrating, persisting, maintaining pace, adapting, or managing himself. A.R. 23. The ALJ determined that Plaintiff has a residual functional capacity ("RFC") "to perform medium work as defined in 20 CFR [§] 416.967(c) except the claimant would be further limited to performing only simple and routine tasks." A.R. 24, 28. Relying on the opinion of a vocational expert, who testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform certain jobs existing in the national economy, the ALJ determined that Plaintiff is not disabled. A.R. 29-30.

After the Appeals Council denied review of the ALJ's decision, A.R. 2-6, Plaintiff sought review in this court. [Docket No. 1.]

**II.    ISSUES FOR REVIEW**

1. Did the ALJ err in finding that Plaintiff's back pain was not a medically determinable impairment?
2. Did the ALJ err in rejecting Plaintiff's symptom testimony?
3. Did the ALJ err in rejecting lay witness symptom testimony?
4. Did the ALJ err in evaluating the medical evidence?
5. Is the ALJ's RFC assessment supported by substantial evidence?

---

2016, while the record shows he applied on January 19, 2019. *Compare* A.R. 19 *with* A.R. 232. The discrepancy is not material to this opinion.

2

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotations omitted).

## IV. DISCUSSION

### A. Medically Determinable Impairment ("MDI")

Plaintiff argues that the ALJ erred in finding that his low-back pain was not a medically determinable impairment. Mot. at 16-17.

#### 1. Legal Standard

At step two of the five-step sequential evaluation for disability claims, the ALJ must determine whether the claimant has one or more severe medically determinable physical or mental impairments that significantly limit a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). "Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d

3

1040, 1048 (9th Cir. 2017). To constitute a medically determinable impairment, the impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1521, 416.921; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921; *see Price v. Kijakazi*, No. 21-35377, 2022 WL 1153930, at *1 (9th Cir. Apr. 19, 2022); *Edlund*, 253 F.3d at 1156. The agency will not use a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. The plaintiff bears the burden to proffer medical opinion evidence to show a medically determinable impairment. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005).[2]

### 2. Discussion

In determining Plaintiff's severe impairments, the ALJ acknowledged that "the record shows complaints of low back pain" but determined this was not a medically determinable impairment because "there are no objective findings in the medical evidence to establish a diagnosis related to low back pain. A.R. 21-22. The ALJ identified "no evidence of any formal diagnosis related to the alleged low back pain, such as degenerative disc disease or some other related impairment." A.R. 22. Moreover, "'pain' is a symptom and cannot, by itself, be considered an impairment." A.R. 22.

The court concludes that substantial evidence supports the ALJ's determination that Plaintiff's low back pain is not a medically determinable impairment. The record contains evidence that Plaintiff complained of chronic lower back pain on multiple medical visits. *See, e.g.*, A.R. 521, 541, 564, 658-86, 848, 850, 902, 915-916. Plaintiff also testified about his back pain at the hearing, as did Plaintiff's girlfriend, Nancy Parker. A.R. 56-57, 83-84. On September

---

[2] Plaintiff styles his challenge as addressing the ALJ's "severity finding." However, as Plaintiff concedes, the ALJ in fact found that his back pain was not a medically determinable impairment. A.R. 21-22; Mot. at 17. The ALJ did not reach the severity of Plaintiff's back pain. *See* A.R. 21-22.

10, 2010, Plaintiff was taken to the emergency room after feeling a "strain in his lower back" and experiencing acute low back pain after lifting a box. A.R. 658, 678-79. Dr. Khoi Lam determined that Plaintiff had "an acute lower back spasm." A.R. 679. Plaintiff was discharged and given prescriptions to treat the pain. A.R. 662.

On April 13, 2017, Dr. Eugene McMillan examined Plaintiff, who acknowledged a "four year history of back pain" and that "his back pain is present every day." A.R. 541. Plaintiff reported to Dr. McMillan that he had "x-rays with Washington Hospital, which revealed a muscle strain," and that he had visited the emergency room in 2014 due to flare-ups in his back pain. A.R. 541.[3] Plaintiff reported that he did not undergo an MRI due to claustrophobia. A.R. 541. Dr. McMillan conducted a physical examination, including of Plaintiff's cervical and lumbar spine flexion, extension, rotation, and lateral movements. A.R. 543. Dr. McMillan did not make any overall diagnosis or findings about Plaintiff's complaints of back pain; instead, he conducted a functional capacity assessment only. A.R. 543-45.

Finally, at a medical visit on January 3, 2018, nurse practitioner Cindy Lee observed lumbar tenderness that Plaintiff attributed to injuries from car accidents, and she referred him to a neurosurgeon for lumbar back pain. A.R. 848-850. Ms. Lee also recommended that Plaintiff undergo a lumbar MRI. A.R. 849.

The record supports the ALJ's finding that Plaintiff's back pain is not a medically determinable impairment because it is not established by objective medical evidence. The record does not contain any evidence of "medically acceptable clinical and laboratory diagnostic techniques" used to assess Plaintiff's back pain; Plaintiff admitted that he did not undergo an MRI, and the record does not contain any evidence of x-rays or findings based on any examination. Dr. Lam's 2010 determination of an "acute muscle spasm" and Nurse Practitioner Lee's 2017 observation of lumbar tenderness are not medical opinions supported by a diagnosis or objective medical tests. Dr. McMillan's 2017 examination did not result in any objective findings or diagnosis. *See Ukolov*, 420 F.3d at 1006 (noting that agency regulations require that "a medical

---

[3] Even though Plaintiff reported this to Dr. McMillan, the record does not contain any x-rays or analysis of x-rays.

1  opinion offered in support of an impairment must include symptoms [and a] diagnosis" and

2  holding that "[b]ecause none of the medical opinions included a finding of impairment, a

3  diagnosis, or objective test results, Ukolov failed to meet his burden of establishing disability").

4  Plaintiff's repeated complaints of back pain are thus insufficient to support a medically

5  determinable impairment. *See Beach v. Saul*, 846 F. App'x 434, 435 (9th Cir. 2021) (finding that

6  "Beach's own statements are insufficient to establish an MDI"). Accordingly, the court finds that

7  substantial evidence supports the ALJ's finding on Plaintiff's lower back pain.[4]

### B. Witness Testimony

Plaintiff argues that the ALJ improperly rejected his symptom testimony and the lay witness symptom testimony of his girlfriend Nancy Parker. Mot. at 18-20. The ALJ acknowledged this testimony but discounted it as not entirely consistent with the medical evidence. A.R. 24-25.

### 1. Legal Standard

In general, credibility determinations are the province of the ALJ. "It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld." *Allen v. Sec'y of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984) (citations omitted). An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (citing 42 U.S.C. § 423(d)(5)(A)). However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate "specific, cogent reasons" for doing so. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). In evaluating a claimant's credibility, the

---

[4] Plaintiff argues that the ALJ had a duty to develop the record about Plaintiff's back pain, especially in light of Plaintiff's mental impairments. This duty is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding no duty where the ALJ had "years of Ford's mental health records and multiple opinions from non-examining psychiatrists"). Here, the ALJ consulted records dating as far back as 2010 about Plaintiff's back pain complaints. None of the records are ambiguous or contradictory. While the duty is "heightened where the claimant may be mentally ill and thus unable to protect her own interests, *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001), there is no evidence that Plaintiff's mental impairments rendered him unable to protect his interests.

ALJ cannot rely on general findings, but "must specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Id.*; *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (ALJ must articulate reasons that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281 (citations omitted). First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of" the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citation omitted). Absent affirmative evidence that the claimant is malingering, the ALJ must provide "specific, clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (rejecting Commissioner's challenge to "specific, clear, and convincing" legal standard for rejecting claimant's testimony in the absence of malingering).

With respect to lay witness testimony, "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citations and quotation marks omitted). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). An ALJ must give reasons that are "specific" and "germane to each witness" to reject lay witness testimony. *Id.* (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006)). "Inconsistency with medical evidence is one such

7

reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (citation omitted).

### 2. Analysis

At the second hearing, Plaintiff testified that he experiences panic attacks one or twice a week, and that they are triggered by crowds, loud noises, and stress. A.R. 48-49. He avoids crowds as a result and tries to be accompanied by others when he goes outside. A.R. 51-52. Plaintiff also testified to experiencing auditory hallucinations as well as depressive episodes twice a week. A.R. 52. Plaintiff further testified to a history of trauma. A.R. 49-50. Parker has lived with Plaintiff for over four years. At the first hearing, Parker testified about Plaintiff's pain attacks and mood swings. A.R. 80-84. Plaintiff and Parker's symptom testimony is corroborated by Plaintiff's self-reported medical history at mental status evaluations performed by Dr. Ute Kollath, Ph.D., and Dr. Makenna Berry Newton, Ph.D. and Dr. Lesleigh Franklin, Ph.D, in which Plaintiff reported experiencing auditory hallucinations, panic attacks, trauma, anxiety and depression. A.R. 553-554, 573-65.[5]

After concluding that Plaintiff's generalized anxiety disorder and PTSD were medically determinable impairments, the ALJ found that these impairments "could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." A.R. 24-25. The ALJ further found that Plaintiff's "problems are supported somewhat by the objective evidence of record, but not to the extent alleged by [Plaintiff.]" A.R. 28.

The ALJ did not conclude that Plaintiff was a malingerer. Accordingly, he was required to provide "specific, clear and convincing" reasons for rejecting his testimony. *Burrell*, 775 F.3d at 1136.[6] The sole reason the ALJ gave for discounting Plaintiff's testimony was that it was "not entirely consistent" with the medical evidence and that his problems were not supported "to the

---

[5] The ALJ afforded great weight to Dr. Kollath's opinion and little weight to Dr. Newton and Franklin's opinion. A.R. 27.

[6] The Commissioner does not dispute the applicability of the "clear and convincing" standard. Opp'n at 11-12 n.5.

1    extent alleged." *See* A.R. 25, 28.  Although the ALJ's decision contains a discussion of the
2    medical evidence, A.R. 25-28, the ALJ did not connect any specific testimony by Plaintiff to the
3    medical evidence nor did he identify what aspects of Plaintiff's testimony he found not credible
4    and why.  This is insufficient.  An ALJ may not "reject a claimant's subjective complaints based
5    solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain"
6    and must "specifically make findings" supporting the conclusion that a claimant's allegations of
7    severity are not credible.  *Bunnell*, 947 F.2d at 345.

8           The Commissioner highlights "numerous clinical findings in the record" that she claims
9    supports the ALJ's credibility determination.  Opp'n at 12.  The Commissioner also offers other
10   reasons why Plaintiff was not credible, including purported "evidence of effective treatment." *Id*.
11   at 13-14.  Ninth Circuit authority bars the court from considering these reasons because none of
12   them were identified by the ALJ as the basis for rejecting Plaintiff's testimony; to the contrary, the
13   ALJ failed to offer any specific or cogent reasons for discounting the testimony.  "The ALJ must
14   specifically identify what testimony is credible and what testimony undermines the claimant's
15   complaints." *Greger*, 464 F.3d at 972.  "[T]he credibility determination is exclusively the ALJ's
16   to make, and ours only to review.  As we have long held, '[w]e are constrained to review the
17   reasons the ALJ asserts.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (quoting
18   *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).  "Long-standing principles of
19   administrative law require us to review the ALJ's decision based on the reasoning and factual
20   findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the
21   adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-
22   26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

23          In this case, where the ALJ "failed to identify the testimony [he] found not credible" and
24   thus failed to "link that testimony to the particular parts of the record supporting [his] non-
25   credibility determination," the ALJ committed legal error in discounting Plaintiff's credibility.
26   *Brown-Hunter*, 806 F.3d at 494.  The Commissioner's naked assertion that "[t]he ALJ provided
27   numerous, valid reasons for discounting Plaintiff's subjective complaints" is unsupported by the
28   actual text of the ALJ's decision, which does not specifically identify any testimony that is

9

credible or not credible or tie any medical evidence to his testimony. *See* Opp'n at 13. The Commissioner's proffered record evidence amounts to impermissible post hoc explanations of the ALJ's decision to reject—or fail to address—Plaintiff's credibility. While the ALJ acknowledged Plaintiff's testimony that his "symptoms are greatly reduced when taking his medication," the ALJ did so in the context of discounting Dr. Newton's and Dr. Franklin's consultative examination; the ALJ was not making an assessment of Plaintiff's credibility. A.R. 27. The court therefore finds that ALJ's failure to proffer clear and convincing reasons to reject Plaintiff's testimony on the severity of his impairments was legal error.

Furthermore, Parker's testimony about Plaintiff's symptoms was "competent evidence that an ALJ must take into account." *Diedrich*, 874 F.3d at 640. The Commissioner concedes that "[t]he ALJ did not specifically address the reliability of Ms. Parker's statements." Opp'n at 14. Although the ALJ summarized Parker's testimony about Plaintiff's symptom testimony, he did not state whether he took it into account or disregarded it. A.R. 25. Nor does the ALJ offer any specific reasons germane to Parker to reject her testimony. The ALJ's failure to address the credibility of Parker's testimony or provide germane reasons to reject constitutes error.

### C. Other Issues

Plaintiff challenges the ALJ's weight given to the examinations by Dr. Kollath, Dr. Berry Newton and Dr. Franklin, and Dr. MacMillan. Mot. at 12-16. He also takes issue with the ALJ's RFC determination.

The court finds that the errors in addressing the credibility and evaluation of Plaintiff's and Parker's testimony could have impacted the ALJ's assessment and weight given to Plaintiff's medical examinations, as well as the ALJ's RFC determination. In other words, the ALJ's errors on credibility determinations could have affected the analyses at steps three through five.[7]

---

[7] At step three, the ALJ considers the medical severity of the claimant's impairments. If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled. In determining a claimant's RFC at step four of the sequential analysis, an ALJ must consider "all of the relevant medical and other evidence" in the record, 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), and must consider all of the claimant's "medically determinable impairments," including those that are not severe. 20 C.F.R. § 404.1545(a)(2); *Orn v. Astrue*, 495

1     Accordingly, the court finds that the errors are not harmless. An error is harmless only if it is

2     "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104,

3     1115 (9th Cir. 2012) (quotation marks and citation omitted). Specifically, Plaintiff's and Parker's

4     testimony on Plaintiff's mental health symptoms could have impacted the weight the ALJ gave to

5     Dr. Kollath's and Dr. Berry Newton's and Dr. Franklin's psychological examinations to determine

6     the severity of Plaintiff's mental impairments. Additionally, this testimony could have affected

7     the ALJ's RFC determination given that "[t]he RFC assessment must contain a thorough

8     discussion and analysis of the objective medical and other evidence, including the individual's

9     complaints of pain and other symptoms and the adjudicator's personal observations, if

10    appropriate." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (quoting SSR 96-8p). "In

11    other words, the ALJ must take 'the claimant's subjective experiences of pain' into account when

12    determining the RFC." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014)). It is

13    therefore not clear whether the ALJ's errors with respect to Plaintiff's and Parker's testimony were

14    "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115.

15            In sum, the court concludes that while substantial evidence supports the ALJ's finding that

16    Plaintiff's claims of low back pain was not a medically determinable impairment, the ALJ erred by

17    failing to address or explain his rejection of Plaintiff's symptom testimony and Parker's lay

18    witness testimony. The court finds that these errors were not harmless because they could impact

19    other aspects of the ALJ's decision, including evaluation of the medical opinion evidence and the

20    RFC assessment. Accordingly, the court does not reach Plaintiff's challenges to those aspects of

21    the ALJ's opinion and remands the case for further proceedings consistent with this opinion. On

22    remand, the ALJ shall address the credibility of Plaintiff's lay testimony and consider it along with

23    other medical evidence in the record or provide specific reasons for rejecting the testimony if he

24    does so. The ALJ must also take Parker's testimony into account in his evaluations or provide

---

F.3d 625, 630 (9th Cir. 2007). The assessment of the claimant's RFC impacts the fifth and last step, where the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work. If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.

11

1  germane reasons to reject it.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and denied in part.  The Commissioner's motion is granted in part and denied in part.  This matter is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: September 19, 2022



Donna M. Ryu
United States Magistrate Judge